SUSAN PETTINGILL, appellant, from decree of judge of probate, *vs.* HOWARD PETTINGILL, executor.

*Executor—bond of—account of. Limitations—statute of. Waiver.*

Where the person nominated as executor in a will was appointed and filed a bond approved by the judge of probate at the time the will was proved, neither the fact that the bond was not such in all respects as is required by the statute, nor that the executor neglected to return an inventory or settle an account in accordance with his bond, vitiates what he has rightfully done in the discharge of his trust, unless the opposite party has been prejudiced thereby.

Where the bond thus filed and approved was conditioned for the seasonable return of a true and perfect inventory, for faithful administration according to the will, and for the rendering of a just and true account of his administration within one year,—the statute provisions respecting the conditions required must be so far considered as only directory, that the executor may have the benefit of such of his official acts in the premises as are found conformable to the law and the will, and that the account which he has bound himself to render should be considered, and, so far as it is found correct and well vouched, allowed.

Pettingill *v.* Pettingill.

A testator devised to his wife ten dollars to be paid her by his executor in addition
to the provision made for her support and maintenance during her natural life
by 'his devisees, 'agreeably to the conditions of their bond for that purpose,
which was to be in lieu of dower,' and charged all his property devised 'to the
faithful performance of said bond, and in the event of the non-performance
thereof, enough of his estate thus devised' to be sold by his executor as will pro-
vide such support.  He then devised three specified parcels of real estate in fee-
simple to his sons, B. and F., subject to the foregoing charge of his wife's main-
tenance, in the 'proportion of two-fifths of the amount required' therefor, 'and
also to the payment of his debts in the same proportion,' and the remainder of
his estate to two daughters and a third son (the executor), in equal proportions,
subject to the same charge 'in the proportion of three-fifths of the amount re-
quired therefor.'  *Held,* That notwithstanding the bond with the performance of
the conditions of which the property devised was charged, was intended to be
executed on the same day with the will, but in fact was not until two months
afterwards, and after the death of the testator, the provisions in the will relate
to the bond, and its provisions are binding and constitute a valid charge upon
the estate devised.

Also *held,* that it was the duty of the executor to see that whatever was needful
for the maintenance of the testator's widow in accordance with the provisions of
the will, if not furnished by the devisees, should be supplied, and the proper
contribution due from any delinquent devisee enforced.

Also *held,* that the proper method of determining how far the power of sale con-
ferred upon the executor by the provisions of the will should be exercised, is
the settlement of an account in probate, wherein he should charge himself with
his own fifth of all expenditures less the value of the widow's labor in his fami-
ly, and with whatever has been contributed by either of the other legatees or
collected from them and be allowed the cost of maintenance.

Also *held,* that the statute of limitations is not applicable to the costs of mainte-
nance sustained by the executor in behalf of the widow of the testator.

A writing signed by the widow stipulating that 'no person shall ever call on' a
certain one of the devisees of the property thus charged 'or his property for any
part of' her 'support as long as there is any of the other property left,' is not a
waiver of support from the estate, and is void.

Also *held,* that interest be allowed on the six annual installments of expenses next
preceding the filing of the account from the time they respectively became due
to the date of the decree allowing the account.

ON REPORT.

APPEAL from the decree of the judge of probate for the county
of Kennebec, in allowing the account of Howard Pettingill, execu-
tor of the last will and testament of Howard Pettingill, deceased
March 28, 1840.

So much of the will of the testator as is essential appears in the
opinion.

The will was proved at a court of probate held May 4, 1840, when the respondent was duly appointed executor thereof and filed a bond which was approved by the judge of probate, the condition of which was as follows:

'The condition of the above obligation is such, that if the above bounden Howard Pettingill, executor of the last will and testament of Howard Pettingill, late of Augusta, deceased, do make, or cause to be made, a true and perfect inventory of all the real estate and of all the goods, chattels, rights, and credits of the said deceased, which are by law to be administered and have or shall come to the hands, possession, or knowledge of the said executor, or into the hands and possession of any other person or persons for him; and the same, so made, do exhibit, upon oath, into the registry of the court of probate for the said county of Kennebec, within three months from the date hereof; and the same goods, chattels, rights, and credits, and all other the goods, chattels, rights, and credits of the said deceased, at the time of his death, or which at any time after shall come to the hands and possession of the said executor, or into the hands and possession of any person or persons for him, do well and truly administer according to said will; and further, do make, or cause to be made, a just and true account of his proceedings thereon, upon oath, within one year from the date hereof, then the above written obligation to be void and of none effect, or else to abide and remain in full force and virtue.'

Benjamin Pettingill, Foxwell F. Pettingill, Howard Pettingill, jr., Amy Pettingill, and Mary A. Pettingill, about two months after the decease of their father, executed a bond in the penal sum of $2000 to Howard Pettingill and Amy Pettingill, wife of the said Howard, and to the survivor of them with the following conditions:

'That whereas the above-named Howard Pettingill has this day devised to the aforesaid obligors (being his children and heirs at law), all his property, real and personal, with the understanding and agreement that his said children, in the proportion of one-fifth each, are to provide for, take care of, support and maintain, in a

decent, suitable, and comfortable manner, in sickness and in health, so long as she shall live, their mother, the said Amy Pettingill. Now if said children and obligors in this bond shall, in a kind and affectionate manner, in sickness and in health, and so long as she shall live, provide for, support and maintain their mother, the said Amy Pettingill, at such place as she may from time to time choose, and in a manner suitable and comfortable in all respects, whether in relation to her house, living, or clothing (the intention being, without enumerating the specific articles of living, or the duties required to secure to the said Amy Pettingill a home, living, clothing, and all other necessaries and comforts in sickness and in health, suited to her age and condition in life), and shall also pay her annually, an amount not exceeding ten dollars, to be paid in quarterly payments, to be applied to such uses as said Amy may choose, then this bond to be void, otherwise, to remain in full force.'

The executor claimed the following sums for the maintenance of Amy Pettingill, widow of Howard Pettingill, deceased, viz. :

| | |
|---|---:|
| From March 28, 1840, to March 28, 1861, at $110 per year, | $2,310.00 |
| To interest on twenty installments, | 2,706.00 |
| To continuing maintenance from March 28, 1861, to March 28, 1871, at $220 per year, | 2,200.00 |
| To interest on nine installments, | 594.00 |
| | $7,810.00 |
| Less one-fifth, | 1,562.00 |
| Balance, | $6,248.00 |

The judge of probate allowed the several sums exclusive of interest. Whereupon Susan Pettingill appealed and seasonably filed the following reasons of appeal:

1. The said Howard Pettingill never gave such a bond as the law required to authorize him to act as executor of the will of Howard Pettingill deceased, nor did he return any inventory of the real estate, goods, chattels, rights, and credits of the testator; nor did

he render an account of his administration as required by law, and said decree of the court, allowing the account now before the court is unauthorized by law.

2. The said Howard Pettingill, if executor as claimed, has no authority under the will of Howard Pettingill, or by law, to charge the estate of Howard Pettingill with expenses incurred by him in supporting and maintaining the widow of the said Howard Pettingill after the decease of her said husband.

3. The said account for expenses in supporting and maintaining Amy Pettingill, widow of Howard Pettingill, deceased, is barred by lapse of time.

4. The provisions of the will of Howard Pettingill, deceased, attempting to charge his estate, or the legacies therein made, to his legatees, with the performance of a bond, or the conditions of a bond alleged to have been entered into by his said legatees for the support and maintenance of his wife, Amy Pettingill, during her natural life, are inoperative and void, no such bond having been entered into or signed by his said legatees or any of them, at the time of the execution of his said will, or at any time during the life of the said testator.

5. If said provisions of said will are valid and operative, and if said Howard Pettingill is the lawful executor of said will, and authorized to act as such, he is not authorized by the provisions of the will nor by law to provide the said Amy Pettingill with her support and maintenance, and then charge the expense to said estate, nor to proceed to enforce payment, or contribution from any of said legatees for the support and maintenance of said Amy Pettingill, except at her request and under her direction, and the said Amy Pettingill has not so requested or directed, but has waived her rights, if any she had, under said will, to call upon or enforce payment or contribution toward her support and maintenance, from any of the legatees named in said will, except the said Howard Pettingill and Foxwell Pettingill, and has supported herself instead, and did expressly agree with said Benjamin Pettingill in his lifetime, that no person should ever call upon said Benjamin or his

property for any part of her support, so long as there were any other of the property left.

6. The said Benjamin Pettingill, previous to his death, paid the said Amy Pettingill a large amount towards her support, for which no credit is allowed in said account or decree, and paid and contributed towards her support and maintenance all that she ever requested him to pay or contribute.

7. That said Amy Pettingill has worked for the said Howard Pettingill, in his family for thirty-one years, since the death of her said husband, and has fully paid him for her support and maintenance, above what he has himself to contribute, and he has no legal or equitable right to charge her support to the estate of her husband, nor to enforce payment for it, or any part of it, from any of the legatees named in said will.

The remaining facts appear in the opinion.

*S. Lancaster,* for the appellee.

*E. F. Pillsbury,* for the appellant.

Howard Pettingill is a residuary legatee. The bond given by him is not such as the law requires. Acts of 1830, c. 470, § 7.

Person named as executor in a will is not legally such until bond is given, as required by statute. *McKeen* v. *Frost,* 46 Maine, 239.

The legatees' bond introduced was not in existence until more than a month after the death of the testator. It is good as to Amy Pettingill, but fails as to Howard Pettingill, deceased before it was given. *Pettingill* v. *Patterson,* executor, 32 Maine, 569.

It can have no connection with the will, and is not admissible in this case.

As the provisions of the will undertake to charge the estate with the true and faithful performance of a bond not in existence at the time of making the will or during the life of the testator, they must be void for uncertainty and impossibility of performance.

The authority given to the executor to sell estate in the hands of the legatees is conditioned upon the non-performance of the conditions of a bond not in existence.

The bond made after the death of the testator and produced here, differs from the provisions of the will.

The will provides for the payment of ten dollars to the testator's wife by the executor. The bond binds the obligors to pay her annually a sum not exceeding ten dollars. The will provides that Benjamin and Foxwell shall pay two-fifths jointly, and the other children three-fifths jointly. The bond makes the obligors liable to one-fifth each.

The account is against the estate of Howard Pettingill for an alleged debt contracted after his decease, by the executor. He could neither create a debt against the estate nor bind the estate. *Davis v. French*, 20 Maine, 21; *Gross v. Howard*, 52 Maine, 195.

The will does not contemplate or require the executor to furnish the support to be repaid to him by the other devisees, but the devisees are to furnish the support to her direct. If Howard Pettingill has furnished her more than his share of her support, he stands as any other person would that trusted her, and his claim is against her.

If he has advanced the share of support that Benjamin was to furnish, he may have a personal claim against Benjamin's estate, but if so, it would be but for six years past, all prior being barred by the statute of limitations.

The will seeks to charge Benjamin and Foxwell jointly with two-fifths of her support. It is alleged that Benjamin has failed to furnish his proportion, and that one of the other devisees, the executor, has furnished it instead, and he now claims to have it allowed against the estate of the testator. Can the whole estate be charged for the failure of one devisee to furnish his joint share of two-fifths?

The support was to be furnished by the devisees directly to Amy Pettingill. The bond produced runs to her. It is independent of the executor, and she can enforce it in her own name. The matter is wholly between them and her, except the provision for selling so much of the estate, by the executor, as may be necessary for such support, in case of non-performance of the conditions of the bond, and that does not authorize the executor to enforce payment

from the other devisees of his own motion without her direction, and without regard to her wishes, much less to enforce a claim against the estate of his deceased father for support alleged to have been furnished by him for or instead of one of the other devisees.

The deposition of Amy Pettingill, introduced by the appellee, shows that she has nothing whatever to do with this proceeding and has no interest in it.

The provisions made in the will and by the bond produced for the support of Amy Pettingill are for her benefit, and she has the right to waive them or release them, and support herself by her labor, or in any other way, and the evidence shows that she has waived the claim against Benjamin by neglecting to enforce it for thirty-one years, and made a positive agreement with him, voluntarily, that no person should ever call upon him or his property for any part of her support so long as any of the other property remained, and her own testimony shows that she still desires that agreement carried out, provided she had the right to make it, and that she has no interest in this proceeding or anything to do with it. Can the executor sustain a claim against the estate of his father for Benjamin's share of her support after she has thus waived and released her claim upon him?

It would have been much easier for Benjamin to have supported her one-fifth of the time, if she had not promised and agreed to release him, than it will be now for his widow to raise the money to pay for thirty-one yearly installments with interest, as charged in the account, and to allow the executor to enforce the payment of money and interest as proposed in this proceeding, after the mother, for whose benefit and to whom the support was to be furnished, has thus induced Benjamin to neglect to furnish such support, would be to countenance a virtual fraud upon Benjamin.

The suit brought upon the bond produced, by Amy Pettingill, against the executor of Foxwell's estate, shows that she accepted this bond from the devisees of her husband's will, made after his decease. Its acceptance must be regarded as in lieu of the provisions of the will, or, in lieu of the right of dower in the estate which

Pettingill v. Pettingill.

she would-have upon rejecting the provisions of the will or their failure for uncertainty.

BARROWS, J. The case on the part of the appellant, as reported, is deficient for want of any agreement or evidence showing the appellant to be so interested in the settlement of the executor's account, as to be entitled to an appeal. In the hearing of a probate appeal, the first duty of the appellant is to establish his right to appeal. Ordinarily, unless this is made affirmatively to appear, the appeal will be dismissed without further examination.

In the present case, however, one or two questions of some importance have been raised and commented upon by counsel, apparently with the understanding that the right was to be conceded, and, contrary to the usual course of proceeding, we will assume that it exists, and consider the questions stated in the reasons of appeal.

It is suggested, first, that the appellee never gave such a bond as the statute required, and, consequently, never was legally executor, and so not entitled to settle an account of his doings in that capacity. He gave a bond which was approved by the judge of probate when the will was proved in May, 1840, conditioned for the seasonable return of a true and perfect inventory, and for faithful administration according to the will, and for the rendering of a just and true account of his administration within one year.

When the executor nominated in a will has done thus much, and thereby secured the approval and recognition of the judge of probate for his county, we think that the statute provisions, respecting the conditions of the bond which he shall give, must be so far considered as only directory, that he may have the benefit of such of his doings in the premises, as are found conformable to law and the will of the testator, and that the account, which he has bound himself to render, should be considered, and, so far as it is found correct and well vouched, allowed.

A mistake or omission in an executor's bond, when it has been duly approved by the probate judge, ought not to be held to vitiate

what he has rightfully done in the discharge of his trust, unless the opposite party has been in some manner prejudiced thereby.   The same remark applies to the objection alleged against the reception of this account, that the executor never returned an inventory and did not settle an account of his administration of the affairs of the estate within a year.   This appellant, under the provisions of the will, could have no interest, share, or right whatever in the personal property, rights, or credits, and the failure to return an inventory and render a seasonable account could not, in any wise, affect her interests or liabilities unfavorably.   The executor's remissness in these respects would be a proper subject of inquiry in a suit upon his bond, for the benefit of any one who had suffered by reason of these neglects, and while, under ordinary circumstances, the want of an inventory would subject an account to suspicion, and call for more careful scrutiny in its allowance, the relations which these parties sustain to each other, under this will, are such, that we cannot view these neglects as affording any reason for precluding the executor from rendering an account now.

The testator gave by his will to his 'beloved wife, Amy Pettingill, ten dollars to be paid her by my executor, in addition to the provisions made for her comfortable support and maintenance in sickness and in health during her natural life by my legatees, agreeably to the conditions of a bond entered into by them for that purpose, which is to be in lieu of her dower in my estate, and I hereby charge all my property, real and personal, hereinafter devised, to the true and faithful performance of said bond, and in the event of the non-performance of the conditions of the same, so much of my estate in the hands of my legatees is to be sold, by my executor at public or private sale, as will produce a sum necessary for the proper and comfortable support of my wife, at any and all times when said legatees fail to provide such support in conformity with the conditions of their bond.'

Then he devises three different parcels of real estate in fee-simple to his sons, Benjamin, and Foxwell F., 'subject, however, to the charge contained in this will in relation to the support and

maintenance of my beloved wife, in the proportion of two-fifths of the amount required for that purpose, and also to the payment of all debts by me owing at the time of my decease in the same proportion.'

He then gives and devises the remainder of his estate, real and personal, to a third son (this executor) and two daughters, 'in equal proportions,' charged with the support and maintenance of the wife and with the payment of debts, 'in the proportion of three-fifths of the amount required for that purpose.'

The bond of the legatees, with the performance of the conditions of which the property thus devised is charged, appears to have been designed to be executed upon the same day with the will, and it is set forth in the condition, that the property is thus devised upon ' the understanding and agreement, that his said children, in the proportion of one-fifth each, are to provide for ' the support and maintenance of their mother so long as she shall live, in sickness and in health, ' at such place as she may from time to time choose,' and if they do this in the manner prescribed, and also pay her annually a sum not exceeding ten dollars ' in quarterly payments, to be applied to such uses as said Amy may choose,' the bond is to be void.

The bond was not executed until nearly two months after the date of the will, and not until after the death of the testator. Hereupon the counsel for the appellant contends that the provisions in the will having reference to a bond, cannot relate to this one, and that those provisions which charge the testator's real estate for the performance of its conditions are void. But we have no doubt, that although the conditions of the bond are not fully recited in the will, and the instrument was not executed the day the will was made as at first intended, it is nevertheless the identical bond therein referred to, valid and binding upon the obligors, capable of being enforced by suit in the name of Amy Pettingill, and constituting a valid charge upon the real estate devised by the testator, in the manner directed in his will. This seems to have been the view taken of the matter in *Pettingill* v. *Patterson,* executor of Foxwell Pettingill, 32 Maine, 569.

It seems that Amy Pettingill has always chosen to live with the executor, and that she is still living at the age of eighty-eight; that after Foxwell Pettingill's death, judgment was recovered in her name against the executor of his will at the October term, 1851, for the fifth which he was bound and failed to contribute to her support, at the rate of $22 a year from the date of the bond up to that time. Now Benjamin Pettingill has died without ever having contributed anything, so far as appears, to the support of his mother, and without having taken any steps to relieve the land devised to him, from the payment charged upon it in the will; and the executor, never having before settled an account, comes forward to settle one, apparently for the purpose of determining how much of that land must be sold, under the power given to him in the will, to cover the expense of the support and maintenance of Amy Pettingill hitherto.

The appellant, who in some way represents Benjamin Pettingill's estate, in addition to the objections already considered, claims that the executor was not authorized by the provisions of the will nor by law, to provide Amy Pettingill with support and charge it to the estate of the testator, nor to enforce contribution from any of the devisees, except under the direction of Amy Pettingill, who takes no part in this proceeding, and is asserted to have waived any claim for support so far as Benjamin's property is concerned by reason of having given to him in his lifetime a writing saying that ' no person shall ever call upon Benjamin Pettingill or his property for any part of my support as long as there is any of the other property left.'

It is hardly necessary to remark that this writing indicates nothing like a waiver of support from the estate, but the reverse, and, so far as it attempts to change the burden from Benjamin's portion to the rest of the estate, it is void of effect.

Nor do we think the other position of the appellant above stated can be maintained. The first object of the testator in his will appears to have been to secure the comfortable support and maintenance during her life of his widow, Amy Pettingill. All that he

gave in and by his will, he gave charged with a definite proportion of all the expense necessary for this purpose. And he gave a power to his executor to sell, at public or private sale, enough to produce the sum necessary if the devisee was delinquent. Here was something very like a trust over the whole estate for the benefit of Amy Pettingill.

Whenever any interest in the nature of a trust, or any person or duty implying a trust, is created by a will, and there is no special designation of the executor or any other person as trustee, it is incumbent upon the executor, as such, to administer the estate according to the provisions of the will. *Groton* v. *Ruggles*, 17 Maine, 137 ; *Dorr* v. *Wainwright*, 13 Pick. 328.

We think it was not only the right but the duty of the executor to see, that whatever was needful for the maintenance of Amy Pettingill in accordance with the provisions of the will, if not furnished by the legatees, should be supplied, and that the proper method of determining how far the power of sale, conferred upon him by the provisions of the will, should be exercised, is the settlement of an account in probate, wherein he should charge himself with his own fifth of all expenditures and with whatever has been contributed by either of the other legatees or collected from them, and be allowed the cost of the maintenance.

But the appellant further objects that much of the sum charged in this account is barred by lapse of time. We do not think that the statute of limitations has any application here.

' A trust or charge, created by will, upon the real estate for the payment of debts, prevents the statute from running against such debts as were not barred in the testator's lifetime.' Williams on Executors, Pt. V, Bk. II, c. 2, p. 1840, and cases there cited. In like manner if a legacy is charged upon the land, and especially where the bequest is of this continuing character, we think nothing short of proof of its fullfilment, payment, or release will bar the claim on account of it ; and that the executor, who has fulfilled the requirements of the will in relation to it, is entitled to the same remedy for his reimbursement which the will furnishes to insure

its payment to the legatee. The case seems rather to fall within the rules indicated in *Nowell* v. *Bragdon*, 14 Maine, 320, and *Nowell* v. *Nowell* (not reported) therein cited, based upon the decree passed in the probate court, in pursuance of the decision in the previous case of *Nowell* v. *Nowell*, 2 Greenl. 75.

The report provides for a hearing before a judge at *nisi prius* in this court, to determine the amount to be allowed on the account if the executor is held entitled to render one. Preparatory to that hearing, it remains for us to determine three more questions, two of which are raised by the reasons of appeal, and one is presented by the appellee.

1. Whatever Benjamin Pettingill actually paid and contributed to the support of his mother is to be accounted for. The accountant should charge himself with all that either of the legatees has paid as well as with his own fifth, thus giving credit to the full amount of their shares to those who have borne their full proportion of the expense, and, *pro tanto*, for all payments that any devisee has made towards relieving his or her share of the estate. It does not appear that any evidence of such payments by Benjamin Pettingill was offered before the judge of probate, and so far, none has been offered in this court; but under the stipulation above referred to, both parties may yet put in proof upon that point.

2. The same course is to be taken with respect to the value of Amy Pettingill's services in the executor's family. It is true that the testator gave her a right to have her maintenance from the estate without labor, but if she preferred to work, and thereby did in fact make the cost of her maintenance less, it should enure to the benefit of all those upon whose lands the cost of the maintenance was charged. That cost was just so much less than it otherwise would have been, and, in consequence, less should be allowed. From her age and from her own testimony on this point, we should infer that the deduction to be made on this account must be slight; but such testimony as either party may have to offer, at the hearing upon this point, is to be considered in making up the amount to be allowed.

3. The probate judge allowed no interest upon the annual installments of expense; and this was in accordance with the general rule and ordinary practice in probate matters of this sort, *Storer* v. *Storer*, 9 Mass. 37; for, as a general thing, the executor or administrator is deemed not entitled to interest on what is advanced by him beyond the funds of the estate in his hands, because it is in his power to reimburse himself from the estate at any time, and he is under no legal obligation to advance his own moneys for the benefit of the estate, but may supply himself from the estate as it is needed. But this rule is not of universal application; and where the advances made have been meritorious and beneficial, and the executor or administrator has not been guilty of unreasonable delay, interest is sometimes allowed. *Jennison* v. *Hapgood*, 10 Pick. 77; *Rix* v. *Smith*, 8 Verm. 365; *Dilworth* v. *Sinderling*, 1 Beavan, 488.

In the present case it would have been somewhat harsh in the executor, and needlessly burdensome to the devisees, and wasteful of the estate, if the executor had visited a merely temporary failure to contribute their proportional part by his brothers and sisters, with a sale of some small fraction of the land devised; and, under all the circumstances, we think that interest upon the six annual installments, next preceding the filing of the account, from the time they respectively became due to the date of the decree, should be allowed. *Executor's account allowed. Amount to be settled and decree entered at nisi prius.*

APPLETON, C. J.; KENT, WALTON, DICKERSON, and DANFORTH, JJ., concurred.