WOONSOCKET INSTITUTION FOR SAVINGS *vs.* STEPHEN W.
BALLOU *et als.*

A., after certain specific and pecuniary legacies, gave the residue of his estate to three persons, " they paying out of the same all my just debts, funeral charges, and expense of settling my estate." The personalty of the testator was exhausted by debts, legacies, and administration expenses, and a creditor holding a promissory note, indorsed by the testator, filed his bill in equity against the three residuary donees to enforce payment from the real estate devised to them.

*Held*, that the bill should be sustained.

*Query*, whether under the R. I. Statute property expressly charged with the testator's debts does not even for creditors become the primary fund for their payment.

A testamentary charge on realty for the payment of debts prevents the statute of limitations from running against such debts as were not barred in the testator's lifetime.

In Rhode Island payments made on a joint note by one of the joint debtors prevent the statute of limitations from running in favor of the other joint debtors whether they authorized such payments or not.

BILL IN EQUITY, to establish a charge on realty.

*November* 10, 1888. DURFEE, C. J. This is a suit by the complainant bank to enforce the payment of a promissory note out of real estate, devised to the defendants, Stephen W. Ballou, Charles H. Ballou, and Osborn J. Ballou, by their father, Warren J. Ballou, late of Cumberland, deceased.

The will of Warren J. Ballou gives : *First*, a legacy of four thousand dollars to his wife ; *second*, to his daughter, Mary Clark, all notes, demands, or amounts due the estate from her husband ; *third*, to Davis Cook four thousand dollars in the stock of the Cumberland National Bank, belonging to the testator, in trust for his said daughter, for life, with remainder to her issue, etc. ; and *fourth*, the residue of his estate, real and personal, to his three sons, who together with Ellis L. Blake, administrator with the will annexed of the estate of Warren J. Ballou, are the defendants, in manner following, to wit : " I give, devise, and bequeath to my sons Stephen W. Ballou, Charles H. Ballou, and Osborn J. Ballou, jointly and in equal portions, all the rest and residue of my real and personal estate of every kind and nature, and wheresoever situated or lying, to be and remain to them, their issue, descendants, and heirs forever, they paying out of the same all my just

debts, funeral charges, and expense of settling my estate " : with provisions over in case of the death of either of said sons without issue during the testator's lifetime. It is real estate passing under this clause which the bank seeks to reach, claiming that the devisees hold it under said clause, subject to a charge or trust for the payment of the testator's debts. The note which is the ground of suit is in the words and figures following, to wit :

" $5,000 : —

" WOONSOCKET, R. I., Jan'y 1, 1869.

" On demand for value received, we, Rankin, Wood & Co., as principal, and Warren J. Ballou and Wm. H. Andrews, as sureties, jointly and severally promise to pay to the order of the Woonsocket Institution for Savings, Five Thousand dollars, with interest at seven per centum per annum, payable semi-annually in advance at Bank.

(Signed)                    " RANKIN, WOOD & Co., Principal.
                            " WM. H. ANDREWS.
                            " WARREN J. BALLOU."

Warren J. Ballou died April 1, 1876. Interest on the note was paid semi-annually by Rankin, Wood & Co., until 1878, and subsequently by the defendant, Ellis L. Blake, as administrator with the will annexed. The bill alleges that the payments by Blake were made out of assets in his hands with the knowledge and consent of the residuary devisees ; but this the devisees deny, and the testimony is contradictory. The bill alleges that the defendants claim that the personal assets have been exhausted by the payment of debts and legacies, and the expenses of settling the estate, and the answer of Ellis L. Blake affirms that said assets have been so exhausted.

Three defences are set up by the defendants in their answers and briefs on which the case has been argued, to wit : *First,* the charge on the residuary real estate is inoperative being a repetition of the statutory charge ; *second,* the claim as against Warren J. Ballou was barred in his lifetime by the statute of limitations ; and if not, *third,* it has been barred since his decease, more than six years having since elapsed before this suit was brought. We will consider the defences in this order.

*First.* Our Statute, Pub. Stat. R. I. cap. 189, §§. 1, 2,[1] provides that the estate of every deceased person shall be chargeable with the payment of his just debts and funeral charges, and the expenses of administration, the personal estate to be primarily chargeable, unless the deceased by will has otherwise directed. Under these provisions the entire estate is liable, and, if required, will be applied, whatever the will. But if the estate is not all required, it is competent for the deceased to make the real estate, or parts of it, primarily liable in relief of the personalty. There are cases which hold that, where the estate is charged generally by will, so that the testamentary is coextensive with the statutory charge, as, for instance, if the estate be devised and bequeathed " after the payment of my just debts and funeral charges," the testamentary is a mere repetition of the statutory charge, and has no effect beyond it. *Cornish* v. *Wilson*, 6 Gill, 299 ; *Smith* v. *Soper*, 32 Hun, 46 ; *Agnew* v. *Fetterman*, 4 Pa. St. 56. There are also American cases which, refusing to follow the laxer construction of the English courts, hold that a charge is not to be implied unless the intent to create the charge is very clearly demonstrated. In Perry on Trusts, § 559, language is used which seems to limit, even more completely, the efficacy of testamentary charges. We think, however, whatever may be the better view where the charge is merely formal or general, that when the language of the will clearly shows an intention to create a specific charge, then the charge attaches for the benefit of creditors as well as for the exoneration of other portions of the estate. *Smith* v. *Wyckoff*, 11 Paige, 49 ; *Gardner* v. *Gardner*, 3 Mason, 178 ; *Potter* v. *Gardner*, 12 Wheat. 498 ; *Peter* v. *Beverly*, 10 Peters, 532 ; *Bank of the United States* v. *Beverly*, 1 How. U. S. 134 ; *Thompson's Appeal*, 11 At-

---

[1] As follows :

" SECT. 1. The estate of every deceased person shall be chargeable with the expenses of administering the same, the funeral charges of the deceased, and the payment of his just debts, and the same shall be paid by the executor or administrator of the estate out of the same, so far as the same shall be sufficient therefor.

" SECT. 2. The personal estate shall stand chargeable for such expenses, charges, and debts in the first instance, and the real estate for all the same which the personal estate shall be insufficient to satisfy, unless the deceased has otherwise directed by his last will and testament."

lantic Reporter, 485 ; *Steele* v. *Steele's Adm'r*, 64 Ala. 438, 460 ; *Sands* v. *Champlin*, 1 Story, 376. The will here gives first $4,000 ; then certain *choses* in action ; then $4,000 in bank stock ; and finally the residue, real and personal, to his three sons, "they paying *out of the same* all my just debts," etc. This charge is clear and direct, and closely resembles the charge in *Smith* v. *Wyckoff*, supra, in which the court held that it was competent for the creditors to come directly into court to obtain satisfaction, though they might have had a perfect remedy at law against the personal estate in the hands of the executors. In *Gardner* v. *Gardner*, supra, the deceased gave his son by will two thirds of a certain farm and two thirds of certain personal estate, he " paying all my just debts *out of* said estate," and the court held that not only the devisee personally, but the estate also, was charged, and might be reached in the hands of the devisee or of any person claiming under him who was not a *bonâ fide* purchaser for value. Judge Story, replying to a suggestion that it would not comport with the statute to give the charge any effect, said : " The statute creates a general charge only in favor of the creditors. It does not prohibit a testator from making a particular provision or appropriating a particular fund exclusively for the payment of his debts, which shall bind his heirs and devisees. . . . And when he creates a particular fund for the payment of his debts, and exonerates all the rest of the estate from the payment of his debts, as to all other persons except his creditors the fund becomes exclusively appropriated for the purpose, as much so as if he had devised it on special trust. . . . The general liability of the real estate to the payment of debts, created by operation of law, does not destroy the specific charge for the same debt." And the Supreme Court of the United States, in *Potter* v. *Gardner*, Chief Justice Marshall delivering the opinion, said : " A testator cannot, by his will, withdraw from his creditors any property which the law subjects to their claims, but he may provide a particular fund for his debts, and if the creditors resort to a different fund, those to whom the property so taken by them was given are entitled to compensation out of the fund provided for debts." It may be questioned whether, under our statute, property which is expressly charged does not become even for the creditors the primary fund ; but of

course, whether it does or not, the creditors may proceed against it as such, and with the commendation of the cour tfor avoiding circuity of remedy.   See *Smith* v. *Wyckoff*, 11 Paige, 49, 57 ; *Peter* v. *Beverly*, 10 Peters, 532, 562 ; *Bank of the United States* v. *Beverly*, 1 How. U. S. 134, 150 ; *Fenwick* v. *Chapman*, 9 Peters, 461, 474.   The first defence is in our opinion untenable.

*Second.*  The second question is, whether the payments of interest semi-annually on the note by Rankin, Wood & Co., copromisors with Warren J. Ballou, the testator, were effectual as an implied new promise to keep the note alive as to him.   There is no evidence to show that he participated in, authorized, or even knew of the payments which were made in his lifetime ; and the devisees contend that such payments on a joint note by one or more of the makers does not operate as a new promise so as to arrest the running of the statute as to any other maker who has not authorized or participated therein ; and that the cases of *Turner & Salisbury* v. *Ross*, 1 R. I. 88, and *Perkins, Adm'r,* v. *Barstow,* 6 R. I. 505, are so counter to the present preponderance of authority that they ought to be reconsidered and overruled.   In *Turner & Salisbury* v. *Ross* the note was a copartnership note, and the payments were made by two of the three copartners in pursuance of a compromise with the payees under the statute ; Digest of 1844, p. 285, and Pub. Stat. R. I. cap. 134 ; [1] and the court held that such pay-

---

[1] As follows :

" SECT. 1.   Whenever any copartnership shall be dissolved, any person wⁱ o was embraced in such copartnership may make a separate composition or compromise with any one of or all the creditors of such copartnership.

" SECT. 2.   Such composition or compromise shall be a full and effectual discharge to the debtor making the same, of the whole of said debt, and be taken and considered in reference to the other copartners as actual payment of such debtor's proportion of the debt, whether the full amount of his proportion of said debt be actually paid or not.

" SECT. 3.   In case an amount exceeding his proportion be actually paid, it shall be taken and considered as payment of the amount of debt actually paid.

" SECT. 4.   Every such debtor making a composition or compromise shall take from the creditor with whom he may make the same a note or memorandum in writing, exonerating him from all individual liability incurred by reason of such connection with such copartnership ; which note or memorandum may be given in evidence by such debtor under the general issue, in bar of such creditor's right of recovery against him.

ments did not arrest the running of the statute in favor of the third copartner, but conceded that generally a partial payment by one of several joint promisors is necessarily a payment for all, and therefore a renewal of the original promise as against all. The decision in *Perkins, Adm'r,* v. *Barstow* was that he who indorses a note payable to another at the time it is made is to the payee a joint and several promisor with the maker, and as such, although but a surety as between himself and the maker, all promises and part payments made by the maker equally affect his liability under the statute of limitations as if made by himself. The payments in both cases were made within six years after the notes were given, and consequently while they were still exempt from the statutory bar. The cases are doubtless at variance with the rule now generally prevailing in the United States, but in many of the states their present rule has been established by statute, and in some of them after contrary decisions had been made by the courts. Wood on Limitations, § 285, and notes. In the unreported case of *Willis* v. *Sheffield*,[1] decided by this court at the September Term A. D. 1882, for the County of Newport, the action was brought A. D. 1880, on a demand note dated August 10, 1869, given by

---

"SECT. 5. Such composition or compromise shall not be so construed as to discharge the other copartners, except as provided in sections two and three of this chapter; nor shall it impair the right of the creditor to proceed at law or in equity against the members of such copartnership who have not been discharged; and the members of the copartnership so proceeded against shall be permitted to set off any demand against said creditor which could have been set off had such suit been against all the individuals composing said firm; and they may avail themselves of any defence in law or equity that would have been available had not this chapter been passed, except that they shall not set up the discharge of one individual as a discharge of all the other copartners, unless it shall appear that all were intended to be discharged.

"SECT. 6. Such composition or compromise shall in no wise affect the right of the other copartners or any of them to call on the person making such compromise for any sum beyond said person's original portion of said debt, if, in consequence of the insolvency, inability to pay, or absconding of any one of said copartners, such person so compromising should become liable to pay more than his proportion of said debt, either in law or equity."

[1] *Willis* v. *Sheffield* was heard by the court. Judgment was entered for the plaintiffs September 22, 1882. The case is Newport County, Declarations 1211. September Term, 1882.

the defendant jointly with another maker, who had made payments thereon October 11, A. D. 1870, September 16, A. D. 1872, June 25, A. D, 1878, and October 29, A. D. 1879, each successive payment occurring less than six years after the next preceding. These payments were relied on to relieve the action of the bar of the statute.  The defendant contended that the payments ought not to have that effect, and strongly urged the court to depart from the rule recognized in *Turner & Salisbury* v. *Ross*, and applied in *Perkins, Adm'r*, v. *Barstow*, in compliance with the stronger current of recent American decision, but the court held that the rule was too firmly settled for this State, whether settled rightly or not, to be altered by anything short of a statute.  We are still of that opinion.  The payments on the note in suit, made prior to the death of Warren J. Ballou, were begun shortly after the note was given, and kept up until shortly before his death. The case is fully in line with the previous cases above named, and we therefore decide that the right of action on the note, as against Warren J. Ballou, had not been barred by the statute at the time of his death.

*Third.* "A trust or charge created by will upon real estate for the payments of debts prevents the statute from running against such debts as were not barred in the testator's lifetime." The language is quoted from Williams on Executors, foot paging 20, 29 ; citing *Burke* v. *Jones*, 2 Ves. & B. 275 ; *Hughes* v. *Wynne*, 1 Turn. & R. 307 ; *Hargreaves* v. *Michel*, 6 Madd. 326.  This rule has been recognized and applied in this country. *Bank of the United States* v. *Beverly*, 1 How. U. S. 134, 151 ; *Lewis's Executor* v. *Bacon's Legatee*, 3 Hen. & Mun. 89 ; *Steele* v. *Steele's Adm'r*, 64 Ala. 438, 460 ; *Pettingill* v. *Pettingill*, 60 Me. 423.  See, also, *Crallan* v. *Oulton*, 3 Beav. 1 ; *Moore* v. *Petchell*, 22 Beav. 172. We think the statute is not a bar to the suit.

The complainants are in our opinion entitled to relief.

*Decree accordingly.*

*James Tillinghast & Francello G. Jillson*, for complainant.

*Nicholas Van Slyck, Cyrus M. Van Slyck & George J. West*, for respondents.