## Case No. 12,303.

### SANDS v. CHAMPLIN.

[1 Story, 376.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1840.

WILLS—CHARGE ON LAND—CONSTRUCTION.

1. Where a will gave certain legacies and bequests to A, and also devised certain real estate to him, annexing a "condition" or "conditions" thereto, and made certain bequests and legacies to B, directing A, in a subsequent clause, to pay all the just debts of the testator. It was *held*, that under the circumstances, the "condition" or "conditions" referred to the payment of the testator's debts, and were not a mere charge upon A personally, but, together with the legacies and bequests to B, were a charge upon the real estate.

[Cited in Jordan v. Donahue, 12 R. I. 201; Woonsocket Inst. for Sav. v. Ballou, 16 R. I. 354, 16 Atl. 146; Powers v. Powers, 28 Wis. 662; Thayer v. Finnegan, 134 Mass. 65; Amherst College v. Smith, Id. 546.]

2. Where a testator devises an estate to a person, and in respect thereof charges him with the payment of debts and legacies, the charges are always treated as charges in rem, as well as in personam, unless the testator uses some other language, which limits, restrains, or repels the construction.

Bill in equity [by Anna Sands against John E. H. Champlin] to enforce a legacy in the will of Ray T. Sands, deceased, as a supposed charge on certain real estate devised by him to Samuel P. Robinson, under whom the defendants claimed title, as purchasers of the

estate. The material clauses in the will were as follows: The testator, in the second clause of his will, says: "I give and bequeath unto my wife Anna, twelve bushels of good Indian corn, five bushels of barley, eight bushels of potatoes, three bushels of garden vegetables, twelve pounds of good sheep's wool, one hundred weight of new milk's cheese, twenty weight of good butter, two hundred weight of good pork, and fifty weight of beef. Also, a loom, with all its necessary apparatus; all my household furniture, except what I shall hereafter dispose of. The above mentioned supplies are to be delivered annually, as long as she remains my widow, and no longer; the other bequestments are to her, her heirs and assigns. I also wish her to have and enjoy, during her widowhood, the occupancy of my south room, and the chamber over the same, the entire use of the chimney closet, one half of the wash-room, and one half of the closet; the entire use of the northwest department of the cellar, and a privilege in the smoke room, and the entire use of the north garret, with the privilege of passing to the above departments, when necessary for herself or family. I further give her the pass-way out of either of the outside doors, and such a privilege as she may wish or desire in the green yard; also a privilege of keeping a reasonable quantity of poultry, not those that might do much injury to the occupier; some is always expected to be done, where poultry is raised." The testator then proceeds in the next clause: "I give and devise unto my nephew, Samuel P. Robinson, my homestead farm, with its buildings and appurtenances thereunto; also my farm on the west side of the island, commonly called the Kentucky Farm. Two rights of Tug swamp; one in the Georgia swamp, the other in the Long Lot swamp, as they are called, with all the privileges and appurtenances to each tract belonging, to him, his heirs and assigns for ever, with such reservations as I shall hereafter make, and one express condition. I give and bequeath to the said Samuel P. Robinson my gray mare and old horse, fifteen sheep, and all my neat stock, except what I shall hereafter dispose of, all my farming utensils, my sideboard, desk, four chairs, kitchen table, and one good bed and bedding. Also, the privilege of carting and securing one half of the sea-weed, that annually comes to my landing on the east side of the island, and carting it therefrom, when convenient. Also the privilege of landing and securing a boat. These bequests are to him, his heirs and assigns for ever, with the conditions that will be hereafter expressed; my clock, being nailed to the house, of course is the property of Samuel." The next clause is: "I give unto my black woman Phillis, her entire liberty; but should she choose to remain with my nephew, Samuel P. Robinson, and work as she did for me, I desire the said Samuel P. Robinson to give her the same fare and usage, and the same privileges she enjoyed, particularly the room she

[1] [Reported by William W. Story, Esq.]

now occupies, and finally such as she received from me; I also give her all such articles as she may claim, the determination of which I submit to my wife, however." The next clause is: "I give unto my black boy John, should he continue in the service of my family, that is, my wife or Samuel P. Robinson, until he arrives at the age of twenty-one, the improvement from that time of the cellar house on the Kentucky farm, the garden south of the house, as it is now fenced, and the lot west of the cellar, as it is now fenced; to him and his family during his natural life; it being one of the reservations I made to Samuel P. Robinson, it is to be understood, that he lives on the premises himself; if he lives in my family until he arrives to the age of twenty-one, I order the annual profits to him from my death. When he goes on the premises to live himself, he is to suffer no other family to live with him, that would be injurious to my other property; then should he occupy the house and land in the manner just mentioned, I then give him four loads of tug annually, during five years, after he shall arrive at the age of twenty-one, to be dug out of the Rodman swamp, so called, in an economical and saving manner, with the privilege of spreading, curing, and carting, where it will be most accommodating to all parties concerned. I also give him the privilege of carting sea-weed, or any other article he may need, on or off said premises, for his own use during the term, where no essential injury will arise." The testator afterwards, in another clause, says: "I order and direct, that one quarter of an acre of land in the northeast corner of my homestead farm, to be set apart and kept sacred as a repository for the dead, for myself, my family, and my heirs, and such of my relatives, that may choose to be buried there. I direct Samuel P. Robinson to have it decently fenced for that purpose; this is a reservation. In consideration of the devises and bequeaths to Samuel P. Robinson, I order and direct as follows: To provide ten loads of good tug, and to have it housed for the use of my wife, at the season such firing is usually secured, to furnish her with a horse, when she wishes to ride, to supply her with all the articles I have bequeathed, and eight dollars in money; the articles and money on or before every Christmas, during the time of her widowhood; the tug also to be delivered annually, as long as she remains my widow; the above articles not to be furnished, if she insists on her dower, as it will be plainly understood to be my meaning in my bequeaths to her. I further order him to pay John E. Sands agreeable to the tenor of the gift made him." He next adds: "To my mother, six months after my death, the legacies; six months after my death, to my sisters and Mary A. Clarke; I also direct him to pay all my just debts; as it is my meaning and will, to leave all my property I have not disposed of, as well that in the granary, as that may be a grow-

ing at the time of my death, to aid him in the discharging them." Then follows this clause: "In consideration of the devises and bequeaths to Ray T. Sands, I order him to pay five dollars annually to my wife, as long as she remains my widow; and three years after my death, I direct him to pay my brother, John E. Sands, or his heirs, one hundred dollars, interest being allowed on the two last years." The testator afterwards appointed his wife executrix, with John E. Sands, executor of the will. These are the only parts of the will, bearing upon the points argued in the cause. The will was made on the 13th of October, 1818, and appears to have been proved in the probate court in September, 1819.

R. W. Greene and A. C. Greene, for plaintiff.

Mr. Snow, for defendants.

STORY, Circuit Justice. The only important question in the present case is, whether the legacies or bequests unto Anna Sands, the widow of the testator, and the plaintiff in the suit, constitute a charge on the real estate devised by the will to Samuel P. Robinson. If they do, then the plaintiff is entitled to have a decree against the defendants; otherwise, the bill ought to be dismissed. It is observable, that the principal part of the legacies and bequests, at least of that part now in controversy, consists of annual supplies of produce and other articles, which are the common produce, growth, contents, or accompaniments of a farm; and may naturally, therefore, be presumed, from the very language used by the testator, to be exactly those things, which were, and would be, the growth, produce, contents, or accompaniments of the homestead farm devised to Robinson. That farm included the testator's mansion house; and it was manifestly contemplated by the testator, that his wife should, during her widowhood, hold and occupy a part thereof for her own use. It might, therefore, be fairly inferred, that the produce and other articles were to come from the same farm. This is not, in the construction of a will, like this, drawn by an uninstructed yeoman, an unimportant circumstance. If the legacies (or annuities, as perhaps they may more properly be called) be charged on the homestead farm, then it is a just conclusion, that the language used meant to charge it also upon all the other real estate devised to Robinson. In other words, the charge was designed to be a charge upon the real estate, and also upon the person of the devisee, in respect of the devise, and the benefit thereby conferred upon him. It by no means follows, in cases of this sort, that because the charge is on the real estate, it is so exclusively; for it may be a charge on the real estate, and also on the person of the devisee, in respect of the devise. The argument, therefore, that es-

tablishes the one, by no means repels the other. This doctrine was sufficiently shown to be supported by principle and authority, in the case of Gardner v. Gardner [Case No. 5,227]. The devise is to Robinson "and his heirs and assigns, with such reservations as I (the testator) shall hereafter make, and one express condition." The testator, in the same clause, afterwards adds: "These bequests are to him, his heirs and assigns for ever, with the conditions, that will hereafter be expressed." What were these reservations? The reservations are sufficiently manifest. They include, by implication, the part of the homestead devised to his wife during her widowhood, and that part devised to the black woman, Phillis; and by express declaration, the devise to his black boy, John, "it being (as the testator states) one of the reservations I made to Samuel P. Robinson." Another express reservation from the devise to Robinson is, the quarter of an acre in the northeast corner of the homestead farm, to be set apart, as a family repository for the dead.

But what is the condition, or what are the conditions referred to by the testator? We observe, that the expression in one place is, "one express condition;" in another, "the conditions, that will be hereafter expressed." The counsel for the plaintiff contend, that the condition or conditions, here referred to, are the due payment and discharge of the legacies to the plaintiff, and perhaps also the legacies to the other persons named in the will, which are to be paid and discharged by Robinson. The counsel for the defendants, on the other hand, contends, that the words refer to the devise over, after the death of Robinson, if he should die without lawful issue, to Ray T. Sands, of all the estate devised to Robinson, with the same reservations; and the further provision, that in case Robinson should die without issue, that the wife of the testator (the plaintiff) should improve the estate so long, as she remained his widow. Perhaps it is not easy, in a case of this sort, where the will was drawn by an illiterate person, in loose and inaccurate language, to say exactly what the testator did actually intend by the words "condition" or "conditions." If I were compelled to give a construction to the words, with reference to the clauses of the will, to which they might appropriately apply, I should incline to apply them to the clause, in which the testator directs Robinson "to pay all my just debts, as it is my meaning and will to leave all my property I have not disposed of, as well that in the granary, as that may be growing at the time of my death, to aid him in discharging them." It is plain, here, that the testator intended to charge Robinson, in consideration of the devises and bequests to him, with the payment of all his debts. Such a charge of debts upon a devisee, in respect to lands devised to him, has always been held to be, not a mere charge on the devisee

personally, but a charge on the lands. This is clearly established in the cases of Clowdsley v. Pelham, 1 Vern. 411; Alcock v. Sparhawk, 2 Vern. 228; and Awbrey v. Middleton, 2 Eq. Cas. Abr. p. 497, § 16,—which fall far short of the stringency, in point of language, which is to be found in the present will.[2] If the language used in this will makes the charge of the debts of the testator a charge on the land devised to Robinson, there is, certainly, very strong reason to apply the same interpretation to the legacies to the plaintiff, if not to the other legacies payable by Robinson. Each of them may be properly deemed conditions annexed to the estate. But I lay no particular stress upon the words "condition" or "conditions," in this will. My judgment proceeds upon the ground of the intention of the testator, derived from the language of the will, with reference to the devise to Robinson. The testator says, "In consideration of the devises and bequests to Samuel P. Robinson, I order and direct (him) as follows;" and he then directs him to provide and supply and furnish his wife with the very articles now in controversy. Here, then, there is a positive direction and order, that these legacies shall be paid to the plaintiff by Robinson. Such an order and direction is in the language of command, and imports a trust fixed upon the estate devised; for it is a charge, in consideration of the devise; or in other words, it is a charge upon the estate in the hands of the devisee. The reasonable intendment of the will was, to provide a sufficient maintenance for the plaintiff during her widowhood, and to have the supplies annually furnished. Now, if the will were to be construed a mere personal charge on Robinson, it is very clear, that, in case of his insolvency, the widow would be left without any maintenance. In case of his death in the lifetime of the testator also, there is no small ground to contend, that the devise might be a lapsed devise, and that the other clauses in the will, devolving the estate and the payment of the legacies on Ray T. Sands, might not apply to such an event; and then, the widow would be left without any maintenance. But if the legacies to the plaintiff are treated, as a charge on the estate devised, the charge will survive, and may be enforced in either event. To carry into effect, then, the obvious intention of the testator from the professed objects of these provisions, ut res magis valeat, quam pereat, (as one may say,) it seems necessary to give this interpretation to the clause. It is at once reasonable, safe, and in entire harmony with the words. Indeed; I understand it to be a general rule in the construction of clauses of this sort, that where the testator de-

---

[2] See many of the cases collected in 2 Pow. Dev. (by Jarman) pp. 644–663, c. 34. See, also, Anon., Freem. 192; Miles v. Leigh, 1 Atk. 573; Cary v. Cary, 2 Schoales & L. 173, 188; Warren v. Davies, 2 Mylne & K. 49.

vises an estate to a person, and in respect thereof charges him with the payment of debts and legacies, the charges are always treated as charges in rem, as well as in personam, unless the testator uses some other language, which limits, restrains, or repels that construction. Upon no other principle can many cases in the books admit of any rational explanation.

There is an anonymous case in Freem. 192, which fully sustains this doctrine. It was there said: "If a man, by his will, deviseth his lands to J. S. and doth desire, that the said J. S. should pay his debts, or if it be, he, the said J. S., paying his debts, or if, immediately after the devise of his lands, he doth appoint or desire, that his debts should be paid, or, if he useth any expression in his will, whereby it appears, that he had any intent to charge his lands with his debts; in such case his lands will stand charged." Now, the doctrine, here laid down, is applied to words of desire, or directions to the devisee to pay debts, and even to a desire immediately after a devise, that his debts should be paid; so as to hold them to import, per se, a manifest intention to charge the real estate devised with the debts. In the present case the words are "order and direct," "in consideration of the devises," which are far more cogent. The case of Miles v. Leigh, 1 Atk. 573, approaches still nearer to the present. There A. devised his real estate to his wife for life, and then to his son R., and gave his daughter C. a legacy of £150, to be paid her in a twelve months' time after R. should come to enjoy the premises, and if R. should die before his wife, then, that H. (another son) coming to the possession of the premises, and surviving his mother, pay to the daughter C., £200; and the testator made his wife his executrix. The sons died before the mother; but R. left a son, against whom the bill was brought by the daughter for the legacy of £200. The question was, whether the legacy was charged on the real estate. The master of the rolls (Mr. Verney), and afterwards Lord Hardwicke, upon an appeal, held the legacy to be a charge on the real estate, and decreed payment out of it accordingly. On that occasion Lord Hardwicke said; "It is objected, that it is not said, to be paid out of the estate at Hills, nor is it said by whom it is to be paid. But there are many cases, where it is neither said to be paid out of the estate, nor by whom, yet has been considered as a charge upon the estate, where the general intent of the testator has appeared. But here, the whole will being taken together, the subsequent clause directing Henry to pay, he coming into possession, &c. is a plain declaration of the testator's intent, that the person, who possessed the estate, should pay the legacy.

The testator intended it should come out of both estates, and he has charged his son in respect to the whole estate he was to have; and that is generally the rule of proportion in charging the son for younger children's fortunes, in respect of the value of the whole estate, that is to come to him. The words are, I think, sufficient to charge the real estate; and as to the personal, it is given absolutely and entirely to the mother; she might spend it, or do what she pleased with it. Nor is the legacy given to be paid at the particular time of the death of the mother; so that it is impossible to imagine, that could be the fund intended by the testator." Now, every word, here stated, applies with increased force to the present case, where the legacies were payable annually. It is plain, that the wife was to receive the same during her widowhood. And yet, if Robinson should die during the life of the wife, leaving issue, they would not be responsible for the charge to her personally; nor, according to the argument, would the estate be chargeable. So that the very objects of the testator would be defeated. His intention was to have a fund for the security of the payment durante viduitate, which can only be by construing the will, as making the legacies a charge on the estate, as well as on the devisee personally, in respect to the estate.

The case of Cary v. Cary, 2 Schoales & L. 173, 188, presents quite as striking an analogy. There, the testator, after sundry bequests, gave to his son, George Cary, "all the rest, residue, and remainder of my real and personal estates, not hereby disposed of; and I do hereby order and direct my said son to pay off my just debts." Lord Redesdale held the debts to be a charge on the real estate. His language was; "He (the testator) charges all his debts on what he gives to his eldest son; that is, all his simple contract debts, as well as the other debts. He says, in effect, I direct they shall be paid out of what I give George Cary. It is not a personal obligation; but an obligation in respect of the property given him." As to its not being a personal obligation, I greatly doubt; but as to the other language, its clear import decides the present question. The testator here expressly charges Robinson with the payment of the legacies, "in consideration of the devises and bequests to him"; that is, as has been already said, and it agrees exactly with the language of Lord Redesdale, it is a charge on him in respect of the property given him by the will; and therefore a charge thereon. Upon the whole, my judgment is, that the legacies given to the plaintiff (Mrs. Sands) are a charge on the real estate devised to Robinson, and that she ought to have a decree accordingly, for the due payment and discharge thereof.