ADIN THAYER, Judge of Probate, *vs.* JOHN FINNEGAN.

Worcester.   Oct. 6, 1880; Oct. 19, 1882. — Jan. 10, 1883.   COLBURN & HOLMES, JJ., absent.

A testatrix appointed her eldest son executor of her will, and gave to him all her property, real and personal, he to pay all her debts and also to pay the school and college expenses of her younger son, and made no other provision for the younger son. Her personal property amounted to $20, and her real estate to $1500. *Held,* that the legacy to the younger son was a charge upon the real estate.

If the payment of a legacy is charged upon land devised to a person who is also appointed executor of the will, and the legatee joins in a mortgage of the land given by the devisee to secure a sum of money borrowed for the latter's personal use, and the mortgagee afterwards sells the land under a power contained in his mortgage and applies the proceeds of the sale to the payment of the mortgage debt, the legatee loses his right to proceed against the land to enforce payment of his legacy, and an action therefor cannot be maintained for his benefit against a surety on the executor's bond.

CONTRACT against a surety upon a bond, dated June 27, 1876, given by Thomas C. Coleman as executor of the will of Mary Coleman, in the form prescribed in the Gen. Sts. *c.* 93, § 2. The case was submitted to the judgment of this court, upon an agreed statement of facts, in substance as follows:

The will contained the following clauses: First. I constitute my son Thomas C. Coleman to be the executor of this my last will and testament. Second. I give and bequeath to said Thomas C. Coleman all my real and personal property of which I shall die seised and possessed, to him and his heirs forever, said Thomas C. to pay all the debts then outstanding at my decease,

and also to pay the school expenses of my son John F. Coleman until through college, provided said John continues to the end of the proposed collegiate course, and so long as he continues at college." The testatrix left personal property amounting to $20, and real estate appraised at $1500.

This action is brought for the benefit of John F. Coleman, whose school and college expenses exceeded the sum of $365, which amount alone has been paid by the executor. There were more than sufficient assets, real and personal, to pay the sum of $365, together with the debts, funeral expenses and charges provided for by the will.

On July 11, 1877, Thomas C. Coleman conveyed said real estate in mortgage to the Worcester North Savings Institution to secure the sum of $500, and on October 17, 1877, again mortgaged the same to the same grantee to secure the sum of $200, both of which sums were borrowed and used by Thomas C. for his personal use and benefit. Subsequently one John J. Sheehan brought suit against Thomas C. upon a promissory note signed by him in consideration of money borrowed for his personal use and benefit, and attached said real estate; and on October 14, 1878, Thomas C. gave a promissory note and mortgage on said real estate for $100 to said Sheehan, to satisfy the judgment obtained in said suit and prevent the sale of said premises thereunder. In the last-named mortgage John F. Coleman, being of full age, joined for the purpose of accommodating Thomas C., Sheehan insisting upon John F. joining in said mortgage.

The last-named mortgage was subsequently assigned to the Worcester North Savings Institution, which subsequently took possession of the mortgaged premises; and on August 18, 1879, they were sold by auction under a power of sale contained in the mortgage, and bid in by the attorney of said bank for the sum of $125, and he on the same day conveyed the same to one Ryan in consideration of the sum of $1040, which was received by the bank in payment of said mortgage debts and the expenses of sale. None of these transactions were known to the defendant until after their occurrence.

Due demand was made by John F. Coleman upon Thomas C. and the defendant, for the payment of the sums due the former for his said school expenses, prior to the bringing of this action.

At the time John F. signed said mortgage to Sheehan, he was ignorant of the fact that Thomas C. had previously mortgaged said real estate to said bank.

The case was argued at the bar in October 1880, by *H. C. Hartwell*, (*J. H. McMahon* with him,) for the plaintiff, and by *G. A. Torrey*, for the defendant; and was submitted on briefs in October 1882, by the same counsel.

C. ALLEN, J.   The question whether the legacy to John F. Coleman, of the expenses of his education, was a charge upon the real estate, depends upon the intention of the testatrix, as gathered from an examination of the whole of her will, in view of the existing circumstances.   Particular facts have often been declared to be especially significant, as indicating such intention, and sometimes, indeed, a rule has been laid down in terms apparently absolute.   Thus it is said in Hawkins on Wills, 294, that " if legacies are given generally, and the residue of the real and personal estate is afterwards given in one mass, the legacies are a charge on the residuary real as well as the personal estate."   This rule is founded on the decisions in *Greville* v. *Browne*, 7 H. L. Cas. 689, 696, 697 ; *Francis* v. *Clemow*, Kay, 435 ; *Harris* v. *Watkins*, Kay, 438 ; *Wheeler* v. *Howell*, 3 Kay & Johns. 198, 203 ; *Cole* v. *Turner*, 4 Russ. 376 ; and earlier English cases.   It is adopted in terms in *Corwine* v. *Corwine*, 9 C. E. Green, 579 ; and it also finds more or less confirmation in other American cases.   See *Lewis* v. *Darling*, 16 How. 1, 10 ; *Adams* v. *Brackett*, 5 Met. 280 ; *Downman* v. *Rust*, 6 Rand. 587, 591 ; *Davis's appeal*, 83 Penn. St. 348, 353 ; 2 Perry on Trusts, § 570.

So, where the devisee of real estate is appointed executor, and is expressly directed to pay legacies, it has been considered as sufficient to show an intention that the land should be charged. *Preston* v. *Preston*, 2 Jur. (N. S.) 1040.   *Dover* v. *Gregory*, 10 Sim. 393.   *Henvell* v. *Whitaker*, 3 Russ. 343.   2 Jarm. Wills, (5th Am. ed., by Bigelow,) 595, 596, and cases cited.   This also has been considered as a significant indication of such intention in this country.   *Van Winkle* v. *Houten*, 2 Green Ch. 172, 191. 2 Perry on Trusts, § 570.

So, where the devisee of real estate, though not appointed executor, is positively directed to pay legacies, especially if such direction is contained in the same sentence with the devise, or

appears to be given in consideration thereof, it has been held sufficient to create a charge on the real estate. *Sands* v. *Champlin*, 1 Story, 376. *Merrill* v. *Bickford*, 65 Maine, 118. *Luckett* v. *White*, 10 Gill & J. 480. *Bank* v. *Donaldson*, 6 Penn. St. 179. *Harris* v. *Fly*, 7 Paige, 421. If no other provision is made in the will for the payment of the legacies, this is considered to add to the strength of the presumption. *Bevan* v. *Cooper*, 72 N. Y. 317. Significance has also been attached to the fact that there was no personal property which the testator could have thought sufficient for their payment; though it may be open to question how far this consideration ought to be taken into account. *Paxson* v. *Potts*, 2 Green Ch. 313, 321. *Wallace* v. *Wallace*, 3 Foster, 149, 156. So, also, where all the personal property is otherwise disposed of. *Bevan* v. *Cooper*, *ubi supra*.

The fact that the legacies are given to the testator's wife or children has been thought entitled to much consideration. *Van Winkle* v. *Houten*, *Bevan* v. *Cooper*, *ubi supra*. And in *Sands* v. *Champlin*, Mr. Justice Story lays peculiar stress on the circumstance, that the testator was making a provision for his widow, to be furnished annually. "His intention," he says, "was to have a fund for the security of the payment *durante viduitate*, which can only be by construing the will as making the legacies a charge on the estate." 1 Story, 383, 386. See also *Leavitt* v. *Wooster*, 14 N. H. 550, 562; 2 Jarm. Wills, (5th Am. ed.) 582, and Bigelow's note.

In considering cases arising in other jurisdictions, the different systems which may there prevail in respect to the statutory liability of real estate for the payment of debts and legacies must not be overlooked; and language which is merely declaratory of the doctrine that real estate generally will, from certain phraseology, be held subject to the payment of legacies, in such sense that it will be the duty of the executor to obtain leave to sell real estate for that purpose, may not have direct application to the question now before us. But, looking at the present case with a view to ascertain the probable intention of the testatrix, we find that the legatee was her son. He was at school and preparing to enter college. The legacy was for the purpose of paying the expenses of his education until he should be through college, and was of course to be paid from time to time,

extending over a period probably of some years. The devisee was appointed executor, and to him the whole property, both real and personal, was given. The direction to pay the expenses of John's education was contained in the same sentence with the devise of the property, and in such close connection as to show that the devise was intended to furnish the means of paying them. There was, indeed, no other source from which the means of paying the legacy could come. The testatrix was apparently as anxious to provide for the younger son as for the older. These considerations have brought a majority of the court to the conclusion that she must be deemed to have intended to subject the property which she left, real as well as personal, to the payment of the expenses of John's education, and that the devise to Thomas was on an implied trust for that purpose, just as if it had been given to him " on condition," or " in considera-tion," or " provided," that he should bear such · expenses, or " it being understood " that he should do so.

The charge upon the land, in the absence of anything to lead to a contrary result, would bind all who claim under the devisee till payment of the legacy.

The legatee might also have a remedy upon the executor's bond at his election. *Sheldon* v. *Purple*, 15 Pick. 528. But, in case of his enforcing this remedy, inasmuch as the land is prima-rily charged by the testatrix herself, the sureties would be sub-rogated to the right of the legatee to proceed against the land. See *Johnson* v. *Bartlett*, 17 Pick. 477; *Atwood* v. *Vincent*, 17 Conn. 575; and cases cited in Sheldon on Subrogation, §§ 89, 90, 131. If, therefore, the legatee, by his voluntary act, dis-charges the land from the lien, this would have the effect to cut off the sureties from proceeding against the land, because they can get no greater rights by subrogation than he had to whose rights they are subrogated.

In the present case, the legatee joined in a mortgage of the land charged with the payment of his legacy, and thereby con-veyed to the mortgagee all his right in the land, — his right to enforce his legacy against the prior mortgagee, as well as his right to enforce it against the holder of the equity of redemption. After the foreclosure and sale, under the power of sale contained in this mortgage, the whole right of the legatee to proceed

against the land was gone, even as against those mortgages in which he did not join. At most, he had only an equitable right in the land; and, by joining in the mortgage, he transferred his whole equitable right to the mortgagee. It follows, therefore, that the defendant, if he were to pay to the legatee the unpaid balance of the legacy, would be unable to proceed against the land for his reimbursement, by reason of the legatee's having joined in this mortgage; and, being deprived by the voluntary act of the legatee of this remedy over, he ought not to be held to make the payment. *Guild* v. *Butler*, 127 Mass. 386; and numerous cases collected in Sheldon on Subrogation, § 86.

*Judgment for the defendant.*