MARY NUDD *vs.* AMELIA POWERS & another.

SAME *vs.* FRANCIS S. AUSTIN & another.

Bristol.  Oct. 25, 1883. — Jan. 30, 1884.  FIELD & W. ALLEN, JJ., absent.

A testator by his will bequeathed to his daughter, for her life, a certain sum of money a month "out of the rents" of certain houses, the land itself being devised to other persons for life, "subject to the reservations" to the daughter, and, after their death and that of the daughter, the rents, income, and profits of the same were given over "forever," with the statement that "said legacy conveys a fee simple in all my said real property" to the last taker; and the will also contained a condition against selling intoxicating drinks upon the premises. *Held,* upon a bill in equity by the daughter against the life tenants, to enforce a trust in her favor, that the gift to her was not charged upon the corpus of the fund; that neither the fee nor the life estates could be sold to provide a fund for her; and that the devisees were not liable personally, except so far as they had received rents and profits, or were liable for the same by reason of their occupation.

If land subject to a charge created by a will in favor of a third person is alienated with notice, the purchaser holds the land subject to the same charge.

A delay of three years in bringing a bill in equity, to enforce a charge upon land created by a will, is not such laches as will defeat the plaintiff's right, if there has been no change in the defendant's position by reason of such delay.

If a bill in equity is brought for the sale of an estate, upon the rents of which a charge is created by a will, and fails to obtain that form of relief, it may nevertheless be maintained to declare and enforce the charge.

TWO BILLS IN EQUITY, the first filed January 11, 1882, and the second May 1, 1882, to enforce trusts alleged to be created by the will of William D. Austin in favor of the plaintiff. The material parts of the will, which was dated June 20, 1878, were as follows:

"After the payment of my just debts and funeral charges, I bequeath and devise as follows:

"1st. To my beloved wife, Mary Austin, the cottage house where I now live, with the land extending back of the same to the westerly board fence; to have and to hold the same to her for her natural life, and after her decease then to my beloved daughter Mary Nudd, wife of William Nudd, to her sole and separate use and her heirs forever, free from the interference and control of her husband.

"2d. To my daughter, the said Mary Nudd, I bequeath all the household furniture and other personal property in said cottage

house at the time of the decease of my beloved wife, and also the sum of seven dollars per month out of or from the income or rents from the store and the dwelling-house owned by me next to my cottage house on Orange Street, and numbered forty on said street, and also the sum of five dollars per month out of the rents of my four-tenement dwelling-house numbered thirty-eight on said Orange Street; said rents to be free from the control and interference of her husband; to have and receive said rents during her natural life only.

" 3d. To Amelia Powers, wife of John Powers, I give and devise the dwelling-house and store numbered forty on said Orange Street, with the land on which it stands to the southerly board fence, and extending westerly by the line of said board fence to the westerly boundary line of my estate, and having for northerly boundary line the line running westerly from Orange Street to the westerly boundary, and adjoining my cottage house estate mentioned in first and second items; to have and to hold the same for her natural life only, and free from the control of her husband, and subject however to the reservations made to Mary Nudd in the second item hereof.

" 4th. To my son Frank I give and devise the four-tenement dwelling-house and land whereon it stands, and situate on the westerly side of said Orange Street, and numbered thirty-eight thereon, together with land between the two board fences which form the northerly and southerly boundaries of said land, including herein the land extending to the westerly line of my said land on the line of said board fences; to have and to hold said premises during and for his natural life only, subject however to the reservations to Mary Nudd, my daughter, as herein set forth in the second item.

" 5th. The above devises and bequests are made upon condition that no intoxicating drinks shall ever be sold upon said premises by said devisees and legatees, and in case said condition is not kept or fulfilled, then said devises and bequests to revert or go to my said daughter, Mary Nudd.

" 6th. To the trustees of the Catholic Orphan Asylum, to be erected in said Fall River, I devise and bequeath the rents, profits and income of all my real property before devised except that mentioned in the first item hereof, in trust for the benefit of

said asylum forever after the decease of the devisees and legatees herein named; said legacy conveys a fee simple in all my said real property in said trustees and their successors; and of this legacy it is my wish and earnest desire that there shall be a vigorous enforcement and observance thereof."

The bill in the first case, which was against Amelia Powers and Mary Austin, alleged that William D. Austin died on September 15, 1878; and that his will was duly admitted to probate; that the testator, at the time of his death, owed no debts; that the rents and income of the estate mentioned in the third clause of the will were more than sufficient to pay the plaintiff the bequest of $7 per month contained in the second clause of the will; that the last-named defendant had an estate of dower in the land; and that both defendants refused to pay the plaintiff the bequest, which was due since September 15, 1878.

The bill further alleged that the orphan asylum, mentioned in the sixth clause of the will, was not in existence, and that there was no indication that it ever would be.

The prayer of the bill was that Amelia Powers be ordered to pay the amount due the plaintiff; and, in default thereof, that the plaintiff be authorized to sell the whole or part of the premises covered by the trust, subject to the dower interest of Mary Austin, and apply the proceeds to the payment of the sums due the plaintiff; and for further relief.

The answer of Amelia Powers admitted the execution of the will and its admission to probate, denied that this defendant had used or enjoyed the premises, or that they were charged with a trust in favor of the plaintiff; alleged that Mary Austin had waived the provisions of her husband's will, and had petitioned the Probate Court to have her dower assigned to her; that commissioners had been appointed, who had assigned to her as part of her dower the upper tenement in the house devised to Amelia Powers. The answer further alleged that the plaintiff had a full, adequate, and complete remedy at law.

It was afterwards agreed in writing that the dower of Mary Austin was assigned to her in the manner set forth in the above answer; and that the defendant Powers had occupied and let the premises in the manner described in the bill, except so much of the same as was assigned as dower to Mary Austin.

The bill in the second case, which was against Francis S. Austin and Agnes Austin, his wife, sought similar relief against the defendants, and against the estate devised to Francis S. by the fourth clause of the will. This case differed from the first only in the fact that the bill alleged that Francis S., on September 15, 1880, conveyed the property devised to him to a third person, who conveyed it to Agnes Austin; and in the fact that dower in the land was not assigned to Mary Austin. The answer admitted certain facts, and contained a general denial of all allegations of the bill not admitted, but said nothing about the alienation of the estate. It was agreed that the defendants had occupied in part, and let in part, the premises in question. Both cases were heard by *W. Allen*, J., on bill, answer, and the facts agreed, and reserved for the consideration of the full court.

*H. A. Dubuque*, for the plaintiff.

*J. W. Cummings & T. F. McDonough*, for the defendants.

HOLMES, J. The gifts to the plaintiff, in the second clause of her father's will, of seven and five dollars a month out of the rents of certain houses, are not charged on the corpus of the fund. Beside the facts that only the income or rent purports to be charged, and that the payments are periodical, *Scholefield* v. *Redfern*, 2 Dr. & Sm. 173, which might not be conclusive, the identical parcels of land are given to the defendants, Powers and Francis Austin respectively, for life, and, after the decease of the devisees and legatees named in the will, that is, of those defendants and the plaintiff, the rents, income, and profits of the same are given over "forever," with the further statement that " said legacy conveys a fee simple in all my said real property " to the last taker. This clearly shows that the land cannot be sold. *Wilson* v. *Halliley*, 1 Rus. & Myl. 590, 601. *Foster* v. *Smith*, 1 Phil. 629. *Philipps* v. *Philipps*, 8 Beav. 193. *Earle* v. *Bellingham*, 24 Beav. 445.

There are other indications that the testator expected and intended the land to be retained, such as the condition against selling intoxicating drinks upon the premises, the absence of any power to sell, and the nature of the final devise. The intention expressed is clear, and the question is purely one of intention. *Baker* v. *Baker*, 6 H. L. Cas. 616, 622, 627, 630.

It being clear that the fee is not charged, it would be inconvenient and unusual if the life estate should be, and such a construction would defeat the probable intention of the testator. It is true that the tenants for life take "subject to the reservations" to the plaintiff. But the "reservations" are from income or rent, and a gift subject to a reservation from rent, otherwise shown not to charge the fee generally, is different from a gift subject to the payment of a lump sum. We think, therefore, that the plaintiff has no right to have the fee or any part of it sold to provide a fund for her, and, if it were within our power to give her the relief she asks, the mere fact that the defendants deny her charges — the income, so far as appears, being large enough to satisfy them when established — would not be a sufficient ground for granting it. See *Graves* v. *Hicks*, 11 Sim. 536, 551.

Again, the charges which the will purports to create are charges upon the rents alone, and not upon the persons of the devisees. The devise is not conditioned upon a payment by them generally, as in *Amherst College* v. *Smith*, 134 Mass. 543. See *Turnough* v. *Stock*, 11 Exch. 37; *Doe* v. *Clayton*, 8 East, 141, 144; *Gardner* v. *Gardner*, 3 Mason, 178, 212. The devisees, by accepting the testator's gifts, accepted no liability beyond what the will expressed.

On the other hand, the rents and profits will be applicable during the life of the plaintiff to make up arrears. See *Graves* v. *Hicks*, 11 Sim. 536, 556; *Booth* v. *Coulton*, L. R. 5 Ch. 684; *Taylor* v. *Taylor*, L. R. 17 Eq. 324; *In re Mason*, 8 Ch. D. 411, 415.

The case is obscurely presented, and we cannot assume, on the answer and admission of the defendants Austin, that there has been an alienation. But as it seems probable, from the form of the agreed facts, that there may have been, and as we desire to dispose of all the questions of the case, we will add that, in that event, the purchaser will hold the land subject to the same charge. *Amherst College* v. *Smith*, 134 Mass. 546. *Thayer* v. *Finnegan*, 134 Mass. 62, 66. *Aldrich* v. *Blake*, 134 Mass. 582, 586.

The defence was put wholly on the ground of laches and want of jurisdiction in equity. The delay of the plaintiff in not proceeding is not a sufficient reason for rejecting the bills. It does not appear that the defendants have made any change in their

position on the faith of the plaintiff's quiescence, or, if they have, that they have any right to attribute it to that cause. In the absence of any such change, a delay of three years is not sufficient to deprive the plaintiff of a vested right of property.

As to jurisdiction, the bill seems to have been brought for a sale of the corpus on the principle of *Cupit* v. *Jackson*, 13 Price, 721, 733, M'Clel. 495, *Hall* v. *Hurt*, 2 Johns. & Hem. 76, and *Horton* v. *Hall*, L. R. 17 Eq. 437. It fails to obtain that form of relief, but we think that it may be sustained to declare and enforce a charge, the legal remedies for which, if any, are either derived from equity, and therefore do not take away its jurisdiction, or are inadequate. See *Manly* v. *Hawkins*, 1 Dr. & Wal. 363.

After proper inquiries, and such amendments as may be necessary, a decree may be framed, under the direction of a single judge, declaring the plaintiff's rights, and ordering the defendant devisees, (and the defendant Agnes Austin, if a purchaser with notice,) to make payments overdue good, so far as they have received rents applicable to such payments, or are chargeable for such rents by reason of their occupation of the premises. If necessary, a receiver of the rents to be appointed. See *Manly* v. *Hawkins*, *ubi supra*; *Pritchard* v. *Fleetwood*, 1 Meriv. 54; *Kelsey* v. *Kelsey*, L. R. 17 Eq. 495.　　　*Ordered accordingly.*