THE BANK OF FLORENCE v. GREGG.

1. WILL.—The words of a testator may be read in the light of the surrounding circumstances, and especially so when the words used are doubtful or ambiguous.

2. IBID.—The sixth clause of the will of G. reads: "I devise and bequeath to my son, Reese C. Gregg, all the residue of my estate, both real and personal, and to his care the protection and support of my daughter, Catherine W. Gregg, during her natural life." The testator provides, in other parts of the will, for all the other members of his family. His daughter Catherine is, and was, a single female, of delicate health, living with her father at the time the will was executed, and dependent on him. The residue was much the larger part of the estate. *Held*, that the testator intended to make the support of Catherine during her natural life a charge upon such remainder.

3. IBID.—LIEN.—Reese C. Gregg takes the lands passing under said devise practically subject to a mortgage to Catherine to secure her support, and she may enforce the same against any portion of said lands, leaving the owner of such tract to enforce his equities for contribution against the holders of other portions thereof.

Before TOWNSEND, J., Florence.      Affirmed.

Action by the Bank of Florence against Reese C. Gregg, Catherine W. Gregg, The Imperial Fertilizer Co., and M. A. Gregg, in foreclosure, commenced December 26, 1893.

The facts are fully stated in the report of the referee:

To the Court of Common Pleas: Pursuant to an order of this court, whereby it was referred to me to determine the issues of law and fact in the above stated case, I respectfully report: That I held references, attended by the attorneys of the parties, took testimony in the cause, which is hereto attached, and heard argument of counsel upon the issues involved.

The complaint in this action is brought for the foreclosure of a certain mortgage executed by the defendant, R. C. Gregg, to one E. R. McIver and one L. A. McCall, of date December 17, 1891, to secure his note of even date for the payment of the sum of $2,000, on the 17th day of December, 1892, with interest after maturity at the rate of eight per cent. per annum. The complaint alleges the execution of the note and mortgage above mentioned, with a description of the property mortgaged; that the mortgage was duly recorded; that the said E. R. McIver and L. A. McCall duly assigned the said note and mortgage to the plaintiff, which is now the owner and holder thereof; that upon information and belief, the defendant, Catherine W. Gregg, holds a mortgage subsequent to plaintiff's upon a portion of the mortgaged premises, and also the defendant, the Imperial Fertilizer Company, and Mary Ann Gregg, hold mortgages subsequent in date to plaintiff's upon the premises described in the complaint; that the condition of the said note and mortgage has been broken, and that there is due thereon the sum of $2,000, with interest from the 20th day of November, 1893, at the rate of eight per cent. per annum, and contains the usual prayer for foreclosure and sale.

To this complaint the defendant, Catherine W. Gregg, filed her answer, in which she alleges that, under the last will and testament of D. Reese Gregg, the premises described in the complaint are charged with her support and maintenance for and during her natural life, in the meantime denying each and every allegation of the complaint except paragraph 5 thereof, and as to such paragraph she admits that the defendant, R. C. Gregg, signed a mortgage purport-

ing to secure the rights of the said Catherine W. Gregg in
and to said premises, but alleges that the same was signed
voluntarily by R. C. Gregg and recorded by him, but denies
having accepted it in any way; and further alleges that the
premises set forth in said complaint, together with all other
property on said estate, are charged with her support, which
was agreed upon to be the sum of $220 annually, and that
said amount is charged and a lien upon all property de-
scribed in said will prior and superior to any mortgage or
conveyance that the said R. C. Gregg may have executed
upon the same. That the defendant, R. C. Gregg, under
said agreement, made payment to the said Catherine W.
Gregg in the sum of $653.70, and that there remains due
and unpaid on the same the sum of $446.30, together with
the annuity agreed upon, to wit: $220 for and during the
term of her natural life.

The defendant, the Imperial Fertilizer Company, also
filed its answer, in which it denies any knowledge or infor-
mation sufficient to form a belief as to the allegations,
except as to paragraph 6 thereof, which alleges a subsequent
mortgage to said defendant, which paragraph it admits.

After the first reference, the attorneys for the defendant,
Catherine W. Gregg, served upon the plaintiff's attorneys
notice of a motion to amend her answer by striking out
paragraph 10 thereof, and inserting in lieu thereof the
following: "The defendant admits, as alleged in paragraph
5 of the complaint, that R. C. Gregg executed to her a
mortgage covering a portion of the land devised to said R.
C. Gregg in the said will. The premises described in the
complaint are, by the will of her father, D. Reese Gregg,
charged with the support of this defendant, which has
been agreed upon by the executor of said will and this
defendant, to be $220 annually, as set forth above, and the
said annual sum is a charge and lien upon the property
described in the complaint, superior to any mortgage or
conveyance executed by said R. C. Gregg. The mortgage
was given by said R. C. Gregg, and taken by this defend-

ant, not as a satisfaction of said lien, but as additional security for the amount agreed on for her support, as aforesaid." To the answer of the defendant, Catherine W. Gregg, the plaintiff filed a replication, in which it denies that the support of the said defendant is charged upon the property devised and bequeathed to the defendant, R. C. Gregg, and alleges that if such were the case, which plaintiff denies, it is not charged solely upon the lands mortgaged to plaintiff, but on other property described in said reply. Regarding the motion to amend the answer of the defendant, Catherine W. Gregg, above referred to, objection having been withdrawn by plaintiff's attorneys and the attorneys for the codefendant, the Imperial Fertilizer Company, the motion is granted, without further comment, and hence I shall consider the case upon the pleadings in their present shape.

To all that portion of the testimony of the witness, R. C. Gregg, as to the declaration of his testator, tending to show his intention in the execution of his will, the defendant, Catherine W. Gregg, objects.

Before proceeding with my findings of fact from the testimony to which objection has been made. The policy of the law is generally against receiving declarations of intention in aid of the interpretation of wills (2 Wharton's Evidence, sec. 992); and it has been said that there is but one situation in which the judicial exposition has the right to invoke the aid of declarations of intention, and that is when the words in the will described well, but equally well, two or more persons, or two or more things, and such declarations are offered to show which person or which thing was meant by the testator, *i. e.*, by the words in the will as used by him. (See *Bodman* v. *American Trust Society*, 9 Allen, Mass., 447). In the construction of a will, of course the first and great object should be to ascertain the intention of the testator, and that intention must be gathered from the paper itself, assisted, it may be, by the circumstances which surrounded the testator at the time of its execution, such as

the state of his family and condition of his property, etc. *Jaudon* v. *Ducker*, 27 S. C., 297. In my opinion, that class of testimony will not be admissible in the interpretation of the will now under consideration. Therefore, with this view of the law, I must sustain the objection.

I find the following facts from the testimony as taken: That the note and mortgage described in the complaint (the execution of which has been admitted) were duly assigned to the plaintiff, on the date of their execution; that no payments had been made thereon except the interest, which has been paid on the same up to the 20th day of November, 1893, and that the plaintiff is the owner and holder of the said note and mortgage.

I find that on the 4th day of March, 1893 (and subsequent in date to plaintiff's mortgage), the defendant, R. C. Gregg, executed and delivered to the defendant, the Imperial Fertilizer Company, his bond in the sum of $1,100, which was secured by his mortgage, of even date, upon the premises described in the complaint, together with other real estate, and that no payments have been made upon the same.

I find from the last will and testament of the late D. Reese Gregg, that he had made previous and specific provision for his daughter, Flora McIver Scott, and that in and by his said will he provided for other members of his family in manner following, that is to say, after devising specifically and definitely of his estate to his wife, Mary Ann Gregg, the testator, in the sixth item of his will, used the following language: "I devise and bequeath to my son, Reese C. Gregg, all the residue of my estate, both real and personal, and to his care the protection and support of my daughter, Catherine W. Gregg, during her natural life."

I find that the said "residue" devised and bequeathed to the said R. C. Gregg to consist of about 700 acres of land, of the estimated value of $8,000, besides a number of mules, horses, cattle, hogs, sheep, plantation tools, and other articles of personal property. I find that the defendant, Catherine

W. Gregg, is an unmarried woman, of frail and feeble health, with no means of support.

I find that on the 21st day of January, 1889, the defendants, R. C. Gregg and Catherine W. Gregg, entered into a written agreement, whereby the said R. C. Gregg obligated himself to pay to the said Catherine W. Gregg the annual sum of $220, in advance, in lieu of the provision made for her under her father's will, and that since the said date she has received under said agreement the sum of $653.70.

I find that the mortgage of plaintiff is prior in date to all incumbrances upon the premises in question, which the defendant, R. C. Gregg, made on the same, and that at the time in which the said mortgage was assigned by E. R. McIver and L. A. McCall, the plaintiff had no notice of the above mentioned contract between the defendants, R. C. and Catherine W. Gregg. I also find that on the 27th day of January, 1893, the defendant, R. C. Gregg, executed a mortgage upon 450 acres of land, whereby to secure the said Catherine W. Gregg in the annual amount stipulated in the -contract before mentioned. I find that the amount due and unpaid, upon plaintiff's note and mortgage, on September 14, 1894, is the sum of $2,130.66.

In presenting my conclusions of law, I shall consider what to my mind is the main and practically the only issue involved, to wit: the individual interest of the defendant, Catherine W. Gregg, in the mortgaged premises described in the complaint. The first inquiry suggested is, has she any interest under the will of her father, D. Reese Gregg; and, secondly, what is the extent of that interest?

By what method can we arrive at a correct legal conclusion as to the first inquiry? Manifestly, the intention of the testator must be sought, and by the plain and specific machinery prescribed for that purpose. "As the will must be in writing, no other intention than that contained in the will itself can be recognized by the court as operative and dispositive." See *Jaudon* v. *Ducker, supra.* In the present case let us consider the circumstances surrounding the exe-

cution of the will in question, the state of testator's family, etc. From the will itself, and from other testimony, we find that the widow and all the children were provided for specifically except (as we may assume for the moment) the daughter, who is of frail, delicate health—the daughter who had resided at the old homestead up to the death of the testator—the daughter who had no means of support. The time had arrived when formal provision was to be made for the family before the testator was to take his final leave from them. He had provided for all except his son, Reese, and his daughter, Catherine, when in the sixth item of his will he devised and bequeathed to his son, Reese C. Gregg, all the residue of his property, real and personal, and to his care the protection and support of his daughter, Catherine W. Gregg, the devise and the charge of support, being in the same sentence, nothing separating them but a comma. From the family relations that had hitherto existed between the testator and his daughter, who had been entirely dependent for support, I cannot approach a conclusion that it was his purpose to disinherit her. In the same sentence in which he devised the residue of his property (which it seems was by far the greater portion) to his son, he provided the support of his daughter at the hands of the devisee and executor of his will. In the absence of precatory expressions which would suggest mere hope, confidence, wish, etc., I am constrained in the present case to conclude that, by "necessary implication" from the face of the paper itself, together with that testimony, showing the condition and circumstances of the family at the time of the execution of the will, the testator intended to make a life provision for his daughter, Catherine W. Gregg, in conjunction with his son, Reese C. Gregg. The next inquiry is, was there such as to become a charge upon the property devised and bequeathed to R. C. Gregg? I think so. It has been urged that in *Lesesne* v. *Witte*, 5 S. C., 450, where the testator devised all his estate to his wife, feeling entire confidence that she would use it judiciously for the benefit of herself and child-

ren, when the court held that no trust arose, a similar doctrine should be held in the present case by analogy; and so in the case of *Arnold* v. *Arnold,* 19 S. E. Rep., 670; but there is a decided want of similarity in the provisions of the wills mentioned in those two cases to the one under consideration. In the two former, the language employed is entirely precatory and recommendatory, while the latter is, by the strongest implication, directory.

It is contended that the contract between R. C. Gregg and his sister, Catherine W. Gregg, in which the former obligated himself to pay to the latter an annuity of $220 in lieu of her interest under the will of her father, and the mortgage given to secure the payment thereof, should preclude her any claim to the mortgaged property. In interpreting the intention of the testator, under the rule before announced, this position would be incompatible and illogical; and, therefore, I cannot consider them except in so far as the annual amount agreed upon is concerned, concerning which there seems to be no issue raised. In holding that there is a charge and lien upon the property for the support of the defendant, Catherine W. Gregg, under the aforesaid will, I hold that the charge and lien are not confined to the property described in the complaint, but the same shall extend to the entire property devised and bequeathed to the said R. C. Gregg, both real and personal.

I, therefore, recommend that the mortgage be foreclosed, and that the premises be sold subject to the equities of the defendant, Catherine W. Gregg, herein announced, taking due consideration of plaintiff's proportion of the liability to the whole property devised and bequeathed to the defendant, R. C. Gregg, under the will of D. Reese Gregg.

To this report the plaintiff and the defendant, the Imperial Fertilizer Company, excepted.

The Circuit Judge filed the following decree:

This case was heard by me upon exceptions to the report of J. P. McNeill, referee, appointed to take testimony and

decide upon the issues of law and fact. The comprehensive report of the referee sets forth quite clearly the issues of law and fact contested in the case. I concur in his findings, except as may be hereafter modified. Does the will of D. Reese Gregg charge the property devised to Reese C. Gregg with the support of Catherine W. Gregg? is the question involved, and is decisive of the case.

From the testimony in the case, I am convinced that the referee has construed properly the intention of the testator to have been to provide for his daughter, Catherine W. Gregg, a support from that portion of the estate devised to Reese C. Gregg, and the legal construction of the language in the sixth clause of the will, aided by the surrounding circumstances, clearly shows that the intention of the testator was that her support should be a charge upon the property so devised, and that such support should not be left to the charity of the devisee. In devising all of the remainder to Reese C. Gregg in the property so devised, he gave to his daughter, Catherine W. Gregg, her estate inherent in and a charge upon same, and did not leave her support dependent upon the hope, wish, and confidence that the devisee, Reese C. Gregg, should perform the trust as a moral obligation.

From the words of the will and the surrounding circumstances, it cannot be successfully contended that the testator, having by various devisees provided for all others, should practically disinherit his daughter, who, by reason of her physical infirmities, above all others was dependent upon the property of her father for support. The proper view is, that the testator, recognizing the inability of his daughter, in her physical weakness, to protect herself with a devise to her in fee simple, devised to his son and executor, Reese C. Gregg, the greater portion of his estate, thus enabling him to perform the legal charge thereon, to wit: the support of his sister, and thus fully providing for her from his estate as he did for all his other children.

The referee holds that the charge, for Catherine W.

12—46

Gregg's support, extended to all other property devised to Reese C. Gregg, in addition to property sought to be sold in this proceeding. This view is correct, but it is sufficient in this case to hold that this particular land, herein considered, is subject to the charge; for, when an estate is subject to a trust, in an attempted disposition of a portion thereof, the entire property not being involved in the case under consideration, the courts should charge the entire trust upon the portion attempted to be sold.

It is not now before the court that Reese C. Gregg now holds the remaining portion of the estate other than that portion now being considered; and, this being the case, should other mortgagees or grantees therein be interested, they not being before the court, it would not be proper in this proceeding to declare the charge on any other portion of the estate, deeded to Reese C. Gregg, other than the land sought to be sold under this foreclosure proceeding.

The parties in interest, affected by this decree, or the purchasers of property sold under this decree, should be left to the equitable action of compelling the present owners of other portions of the estate, devised to Reese C. Gregg, if there should be such parties interested, to contribute to the support of Catherine W. Gregg, on the basis of the entire estate devised to Reese C. Gregg, being charged; but until this is done, the entire estate, or any portion thereof, is charged with her support, and the premises herein should be sold, subject to the amount due Catherine W. Gregg, and her annual support, in the amount so found by the referee.

In all other respects the report of the referee is confirmed, and made the decree of this court, and it is further ordered, that premises described in the complaint be sold by the clerk of the Court of Common Pleas for Florence County, on salesday in February, A. D. 1895, or on some convenient salesday thereafter, for one-third cash and the balance in one and two years, secured by a bond and mortgage of the premises, with legal interest, and the said pre-

mises be chargeable with the annual support of Catherine W. Gregg, during the term of her natural life, in the sum of $220 per year, from the 21st day of January, A. D. 1895, this sum being the amount agreed upon by Reese C. Gregg and Catherine W. Gregg as a proper settlement to be allowed her annually, in lieu of the indefinite sum provided by the will for that purpose, and which I find, under the evidence, to be reasonable and proper; which said sum shall become a lien, chargeable upon the premises herein described, in the hands of the purchaser, his heirs, and assigns, who shall hold same subject to this trust so declared; and that the said Catherine W. Gregg shall have the right to apply in the cause for an order of sale of the premises annually, to enforce the charge for her annual support; and that from the proceeds of sale thereof, under this foreclosure proceeding, the said clerk shall, in the following order, pay first the proper costs of this action and then the amount so found due by the referee to Catherine W. Gregg for her past support, with interest thereon, then the sum of $220, accruing to her for the year 1894, ending 21st day of January, 1895; then from the surplus the amount now found due to the plaintiff on its mortgage debt, with interest; then from the surplus to the defendant, the Imperial Fertilizer Company, the amount so found due on its mortgage debt, with interest, and that said clerk make his report thereof to the Court of Common Pleas.

From this decree the plaintiff and the defendant, Imperial Fertilizer Company, appeals.

*Messrs. Boyd, Brown & Brunson,* for plaintiff, appellant.

*Messrs. Johnsons, DeJongh & Hanckel,* for defendant, appellant.

*Messrs. Woods & Wilcox,* contra.

March 12, 1896. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.    The report of the referee and the decree of the Circuit Judge, which will be embraced in the report of this case, so fully and clearly set forth the facts, and present the question involved, as to supercede the necessity of any further statement here.

The main question is as to the proper construction of the following clause in the will of the late Dr. D. Reese Gregg: "*Sixth.* I devise and bequeath to my son, Reese C. Gregg, all the residue of my eatate, both real and personal, and to his care the protection and support of my daughter, Catherine W. Gregg, during her natural life." The cardinal rule in the construction of a will being the intention of the testator, the practical inquiry in this case is, whether the testator intended, by this clause, to fix upon the residue of his estate, devised and bequeathed to his son, Reese, which appears to have been much the larger portion of his estate, a charge for the support of his daughter, Catherine, during her natural life, or whether his intention was simply to enjoin upon his son a mere moral obligation to support the daughter.

In seeking for the intention of a testator, we must look to the words he has used as expressive of his intention; but we may read those words in the light of the surrounding circumstances, for the very obvious reason that it must be assumed that the testator used the words which he has employed, in the light of the circumstances by which he was surrounded at the time he used the words which are to be construed. While, therefore, we are not at liberty to resort to any conjecture as to what the testator intended to say, or what a court may think he ought to have said, but must look to what *he has said*, yet we may look to the circumstances under which he did say what he has said, with a view to determine what he meant by the expression which he has used. Especially is this the case when the language which he used is doubtful or ambiguous. As is said by Marshall, C. J., in *Smith* v. *Bell*, 6 Peters, at page 75: "The first and greatest rule in the exposition of

wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. Doug., 302; 1 Black, 672. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' 2 Black Com., 499. These intentions are to be collected from his words, and ought to be carried into effect, if they be consistent with law. In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection existing between them, the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words, and ascertaining the meaning in which the testator used them."

Let us then proceed to inquire what the testator intended by the words which he has used, read in the light of the circumstances by which he was surrounded at the time he used those words; for it is quite certain that those words do not very clearly express what the testator really did intend. It is very manifest that the testator intended to make provision for his wife and all of his children except one, who, he takes care to say in his will, has already been fully provided for, thereby clearly showing that he did not intend to disinherit any one of his children; least of all should an intention be attributed to him to disinherit his daughter, Catherine, who appears to have been a woman frail both in body and mind; and, therefore, most likely to excite the sympathy and to call for the protecting care of her father during her life, and some *certain* provision for her support after his death. When, therefore, the testator, after having made such provision as he deemed proper for the other members of his family, gave the residue of his estate, which appears to have been much the larger

part of his estate, to his son, Reese, what better or more natural provision could he have made for this helpless daughter, who was unfit to manage property, than to charge this largest portion of his estate, thus given to his son, with the support of his frail and dependent sister? It is quite certain that the testator intended to make *some* provision for his daughter, Catherine, and this provision having been made in his will, which, as above defined, is "the legal declaration of a man's intentions which he wills to be performed after his death," it must be assumed, in the absence of any language implying a different intent, that the provision thus made was a *legal* provision and implied a *legal* obligation for its performance, and hence enforcible by law. It is true, that a testator may, by using language appropriate for such purpose, indicate an intent to create a mere *moral* and not a *legal* obligation, to use property devised and bequeathed in a certain way or for a certain purpose, leaving it to the discretion of the object of his bounty whether he shall fulfill the obligation, as in the cases of *Lesesne* v. *Witte*, 5 S. C., 450; *McCreary* v. *Burns*, 17 S. C., 45; *Rowland* v. *Rowland*, 29 S. C., 54; *Houze* v. *Baber*, 29 S. C., 466, and *Arnold* v. *Arnold*, 41 S. C., 291. But in the present case the testator used no such language— no words tending to show that the support of the daughter, Catherine, was to be provided for at the discretion of the devisee, Reese C. Gregg—no words expressive of a mere hope or wish or admonition that he should provide for such support. On the contrary, the clause contains words, which negative the idea that the testator intended to impose a mere personal obligation upon the son, which he would be under a *moral* but not a *legal* obligation to perform; for the provision is for the support of Catherine "during *her natural life*," and, as was well argued by counsel for respondent, such a provision necessarily implied a *legal* obligation, the performance of which was intended to be secured by making it a charge upon the property devised and bequeathed. And if the clause should be construed as

creating merely a personal obligation, which Reese would be bound only morally and not legally to perform, then upon his death such obligation would cease, and if his sister survived him, the provision for her support would become utterly nugatory.    Accordingly, we find that in *Sands* v. *Champlin*, 1 Story, 376, as quoted in *Thayer* v. *Finnegan*, 134 Mass., 62 (reported also in 45 Am. Rep., 285), that Mr. Justice Story lays peculiar stress on the circumstance, that the testator was making a provision for his widow, to be furnished annually.   "His intention," he says, "was to have a fund for the security of the payment *durante viduitate*, which can only be by construing the will as making the legacies a charge on the estate."   So here the provision for the support of Catherine was *"during her natural life,"* and that could only be secured by construing the will as making a *charge* on the estate devised and bequeathed to the son.   We agree, therefore, with the referee and the Circuit Judge in the construction which they have placed upon the sixth clause of the will, which the court is called upon to construe.

As to the other question upon which the referee and the Circuit Judge differ, we agree with the latter.   If, as we have seen, under a proper construction of the sixth clause of the will, the devisee, Reese C. Gregg, took the land in question burdened with a charge for the support of Catherine W. Gregg, it was practically the same thing as if Reese C. Gregg held all the property devised and bequeathed to him, subject to a mortgage to Catherine to secure her support, which has been ascertained, both by the referee and the Circuit Judge, to amount to the sum of $220 annually, covering all of the property embraced in such devise and bequest; and, if so, upon the failure to pay the amount so secured, she might enforce her so-called mortgage upon any particular tract of land which it covered, leaving the owner of such tract to enforce such equities, for contribution or otherwise, against the owners of the other property, subject to such charge in such way as he may be advised.   It may be that if all those who own

or hold encumbrances upon the other property were parties before the court, the equities of all parties might be adjusted under the present action; but this we do not understand to be the fact, and hence we see no reason why Catherine W. Gregg should be delayed in enforcing her rights against the parties who are now before the court.

The appeal of the Imperial Fertilizer Company raises two additional points: 1st. That the Circuit Judge erred in not vacating the order permitting Catherine W. Gregg to amend her answer. 2d. That he erred in not holding that the Imperial Fertilizer Company could not be affected in any way by the agreement between Reese C. Gregg and his sister, of which it had no notice, either actual or constructive. As to the first point, the referee reports that the order was made by consent, and there is nothing in the "Case" controverting that statement; and this effectually disposes of that point. As to the second point, we do not understand that the Circuit Judge bases his decree upon the agreement referred to, unless, possibly, so much of his decree as fixes the amount due the defendant, Catherine, for her support; but as the Circuit Judge also found as matter of fact, to which finding there is no exception, that, under the evidence, the amount mentioned in the agreement was reasonable and proper, we do not think there is anything in this point. Indeed, it appears from the "Case" that the agreement referred to was received in evidence without objection, and it is too late to object now.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.